IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CONGRESSWOMAN CORRINE BROWN,

   *Plaintiff*,

v.                                            Case No. 4:15-cv-00398-MW-CAS

KEN DETZNER, in his official capacity
as Secretary of State, THE FLORIDA
SENATE and THE FLORIDA HOUSE
OF REPRESENTATIVES,

   *Defendants*.
_____/

**DEFENDANT SECRETARY OF STATE'S MOTION TO DISMISS AND**
**INCORPORATED MEMORANDUM OF LAW**

Secretary of State Ken Detzner, pursuant to Federal Rule of Civil Procedure 12(b)(1), hereby moves to dismiss the complaint, which effectively asserts two section 1983 civil rights claims against him regarding what the plaintiff contends is the *anticipated* unconstitutional and illegal redrawing of the congressional district she currently represents: Florida's District Five ("CD-5"). The Eleventh Amendment, which reflects well-established principles of state sovereign immunity, precludes those claims against the Secretary, and this Court lacks jurisdiction.[1]

Even though the plaintiff does not allege as much in her first count, both counts in her suit must travel under section 1983, title 42, of the U.S. Code. The Secretary, as a matter of law, is not responsible for congressional redistricting—that is uniquely a legislative function. In turn,

---

[1] This Court of course also lacks subject matter jurisdiction because the plaintiff's claim is not ripe, as the Legislative Defendants point out in their motion to dismiss, DE 23.

the plaintiffs fail to allege any conduct by the Secretary regarding CD-5, and he otherwise lacks the special relationship to congressional redistricting that *Ex parte Young*, 209 U.S. 123 (1908), requires for a section 1983 claim to proceed against a state official.[2]  The Court also should deny the preliminary injunction motion because there is no subject matter jurisdiction and because the injunction the plaintiff seeks against the Secretary would not redress the harm she alleges.

## INTRODUCTION

The plaintiff, Congresswoman Corrine Brown, currently represents Florida's Fifth Congressional District, characterized as a "minority access district."  DE 1 at 1 – 2.  She claims that the Supreme Court of Florida's decision in *League of Women Voters of Fla. v. Detzner*, Case No. SC14-1905, -- So. 3d --, 40 Fla. L. Weekly S432 (Fla. July 9, 2015)—a case that remains open and pending before a Florida trial court on a temporary remand—"ordered [CD-5] redrawn (and has effectively redrawn) in a manner that would undo its historic configuration and disperse the community contained within it."  DE 1 at 2.  The plaintiff contends that the "drawing and redrawing of [the plaintiff's] district, as required by the Florida Supreme Court's opinion, carries with it the very real and imminent possibility of [the plaintiff's] constituents being deprived of the ability to elect a representative of their choice."  DE 1 at 1.

Nonetheless, the only reference in the complaint to the Secretary is a general allegation that the Secretary "serves as Florida's Chief Elections Officer, and custodian of the Florida Constitution," DE 1 at 3, ¶ 6.  The plaintiff does not allege any action that the Secretary has

---

[2]This motion does not comment on whether the plaintiff has arguably cognizable claims under section 1983 to enforce her rights under section 2 of the Voting Rights Act and the U.S. Constitution.  Eleventh Amendment sovereign immunity simply precludes those claims as she has asserted them against the Secretary.

taken or threatens to take that would interfere with her rights or that would affect the deprivation of her constituents' ability to elect a representative of their choice.

Instead, the complaint discusses Florida history that led to the drawing of CD-5 in its current form.  DE 1 at 3 – 10, ¶¶ 9 – 53.  The complaint closes its general allegations with an assertion that the Supreme Court of Florida ordered that CD-5 "be redrawn in an East-West configuration."  DE 1 at 10, ¶ 53.  There is no allegation about whether CD-5 in fact was redrawn by the Legislature in that way, nor could there be:  To date, the Legislature has not adopted a congressional redistricting plan.

Nonetheless, count I asserts that the Supreme Court of Florida's order on how to redraw CD-5 constitutes "minority vote dilution" and violates section 2(b) of the Voting Rights Act, now codified at section 10301(b), title 52, of the United States Code.  DE 1 at 10 – 11, ¶¶ 55, 57.[3]  Despite blaming the court order for the feared change to CD-5, the plaintiff alleges that the Secretary, along with the legislative defendants, is continuing to violate section 10301(b) "by enforcing standards, practices, or procedures that deny African American voters opportunity to participate effectively in the political process on an equal basis with other members of the electorate."  DE 1 at 11, ¶ 59; *see also id.* at 11 – 12 (prayer for relief).  Similarly, in count II, even though she contends that the Supreme Court of Florida ordered the east-west configuration of a new CD-5 (and even though one has not even been adopted), the plaintiff asserts that the Secretary adopted CD-5 "with an intent to, and it does, deny or abridge the right of African American citizens residing in District 5 to vote on account of their race and color," and that this

---

[3]The complaint uses an older statutory citation.  Section 1973 of title 42 was transferred to section 10301 of title 52 of the United States Code.

"intentional discrimination is in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and 42 U.S.C. § 1983." DE 1 at 12, ¶¶ 61 – 62.

Of course, there is nothing the plaintiff *could* allege that the Secretary has done in connection with the drawing of CD-5, because the Secretary has nothing to do with the enactment of congressional districts in Florida. Congressional redistricting is a uniquely legislative function under the U.S. Constitution. The plaintiff seems to acknowledge as much in her memorandum in support of the injunction motion: "Plaintiff faces actual and impending irreparable harm, as *the Florida Supreme Court has ordered the Florida Legislature* to redraw the congressional map in question. Unless enjoined by this Court, Defendants will continue to violate the Voting Rights Act of 1965." DE 3 at 5 (emphasis supplied). Still, the plaintiff's prayers for relief seek a determination that the *Secretary*'s "actions violate the rights of the Plaintiff as protected by Section 2 of the Voting Rights Act," DE 1 at 11, and that his "actions violate the Fourteenth and Fifteenth Amendment [sic] to the United States Constitution and 42 U.S.C. § 1983," DE 1 at 12. Without a connection between the challenged conduct and the Secretary, the suit against the Secretary is barred by the Eleventh Amendment.

## ELEVENTH AMENDMENT IMMUNITY PRECLUDES JURISDICTION OVER THE CLAIMS AGAINST THE SECRETARY OF STATE

The plaintiff sues the Secretary in his official capacity solely because he "serves as Florida's Chief Elections Officer, and custodian of the Florida Constitution." DE 1 at 3, ¶ 6. The plaintiff does not identify any connection between the Secretary and the redrawing of CD-5, and she does not identify any specific enforcement action he has taken or threatens to take.

The States' sovereign immunity is deeply rooted in our Nation's federal structure. *See Alden v. Maine*, 527 U.S. 706, 712-27 (1999). Sovereign immunity is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution and which

4

they retain today[,] except as altered by the plan of the Convention or certain constitutional amendments." *N. Ins. Co. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006) (internal quotation and citation omitted). "[T]he principle of [state] sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III," and that principle now is enshrined in the Eleventh Amendment to the U.S. Constitution. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984).

In turn, as construed, the Eleventh Amendment generally precludes suits in federal court against a State by its own citizens or those of another State. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). "The Eleventh Amendment extends to state agencies and other arms of the state . . . ." *Schopler v. Bliss*, 903 F.2d 1373, 1378 (11th Cir. 1990). "Moreover, the Eleventh Amendment prohibits suits against state officials where the state is, in fact, the real party in interest." *Summit Med. Assocs.*, 180 F.3d at 1336.

Even though section 1983 itself does not abrogate Eleventh Amendment sovereign immunity, that analysis recognizes a narrow exception to the Eleventh Amendment's proscription for suits "challenging the constitutionality of a state official's action in enforcing state law," which are not deemed to be against the State. *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). "[T]he use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity." *Ex parte Young*, 209 U.S. 123, 159 (1908).

"The theory of [the *Young* exception] was that an unconstitutional statute is void and therefore does not impart to [the official] any immunity from responsibility to the supreme authority of the United States." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (internal quotations

and citations omitted) (second brackets in original). "The *Young* doctrine recognizes that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 288 (1997) (O'Connor, J., concurring). "This [exception] has, therefore, been described as a legal 'fiction' because it creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority, and, hence, without immunity protection, when they enforce state laws in derogation of the Constitution." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336-37 (11th Cir. 1999).

The *Young* exception applies, then, "only when those officers [sued] are responsible for a challenged action and have some connection to the unconstitutional act at issue." *Women's Emergency Network v. Bush*, 323 F.3d 937, 949-950 (11th Cir. 2003) (internal quotation and citation omitted). Without that connection, the suit "merely [makes the officer] a party as a representative of the state, and thereby attempt[s] to make the state a party," which is prohibited. *Ex parte Young*, 209 U.S. at 157. The Supreme Court's explanation on this point is apropos here:

> *In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional.* They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, *then the constitutionality of every act passed by the legislature could be tested* by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. *That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be*

6

> *raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.*

*Id.* (quoting *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)) (emphasis supplied).  The Supreme Court in fact has warned against "a reflexive reliance on [the] obvious fiction" embodied in the *Young* exception and adhering "to an empty formalism" that would "undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction."  *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 270.  "The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading.  Application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts . . . ."  *Id*.

      The plaintiff has included the Secretary in this suit based only on his general power as chief elections officer and custodian of the Florida Constitution.  DE 1 at 3, ¶ 6.  As the *Young* Court itself noted in the highlighted language above, however, the "general executive power" ordinarily cannot be a basis for the exception from Eleventh Amendment immunity.  *See Women's Emergency Network*, 323 F.3d at 949.  The plaintiff cannot allege why it could here.

      The Secretary's election duties have no relation at all to the Legislature's redistricting responsibilities or to the standard of judicial review to be applied to a challenge to those districts.  Reapportionment of congressional districts is uniquely a legislative function.  *See* U.S. Const. art. I, § 4 (delegating to the legislative power of each State the authority to set the times, places, and manner of holding congressional elections); §§ 8.0001, 8.0002, 8.081, 10.11, 10.12, 10.13, Fla. Stat. (providing definitions and delineating boundaries of each congressional, state house, and state senate district, respectively, by composition of tracts, blocks, and voting tabulation districts); *see also* Fla. Const. art. III, § 16(a) (requiring the Legislature to apportion state house

7

and senate districts via joint resolution "in accordance with the constitution of the state and of the United States"); *cf. Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2668 (2015) ("redistricting is a legislative function"). And Florida law specifically tasks each of Florida's 67 boards of county commissioners and supervisors of elections with altering or creating precincts for voting in their respective counties based on the boundaries set for the various districts in the county that will be subject to the state elections process. *See* § 101.001, Fla. Stat.[4] The plaintiff has not and cannot allege facts sufficient to overcome the Secretary's immunity and maintain this suit against him.

\* \* \*

The plaintiff may respond to the Secretary's immunity argument by noting that count I proceeds under section 2 of the Voting Rights Act (52 U.S.C. § 10301), not section 1983. Even though that provision certainly contains well-established federal rights (including those that the plaintiff seeks to enforce here), *cf. Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-84 (2002); *Schwier v. Cox*, 340 F.3d 1284, 1294-97 (11th Cir. 2003) (holding that 42 U.S.C. § 1971 (now 52 U.S.C. § 10101) explicitly creates a federal right that may be enforced by a private action under section 1983);[5] section 2 of the Voting Rights Act does not establish a *separate* private cause of action, *cf. Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not

---

[4]Notably, the Secretary's role in this respect is ministerial in nature: He is required merely to maintain a database of precincts and decennial census blocks and receive boundary and precinct maps from the supervisors. *See* § 101.001(3)(c) – (d), 4(b), Fla. Stat.

[5]*See also Cannon v. Univ. of Chicago,* 441 U.S. 677, 690 n.13 (1979) (noting that to create a private right, a statute's text must be "phrased in terms of the persons benefited").

just a private right but also a private remedy." *Id.* "Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87 (internal citations and quotation omitted).[6]

Section 1983, however, does establish a private right of action through which the plaintiff can seek enforcement of section 2 of the Voting Rights Act. *See Gonzaga Univ.*, 536 U.S. at 283 ("Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States. Accordingly, it is *rights,* not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section.") (emphasis in original). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original); *see also Gonzaga Univ.*, 536 U.S. at 283 (noting that there can be nothing "short of an unambiguously conferred right to support a cause of action brought under § 1983"). "Section 1983 provides a private right of action whenever an individual has been deprived of any constitutional or statutory federal right under color of state law." *Schwier v. Cox*, 340 F.3d 1284, 1290 (11th Cir. 2003). Count I identifies the federal right that the plaintiff seeks to vindicate—the right established in section 10301, title 52, of the U.S. Code. In turn, "§ 1983 generally supplies a [private] remedy for the vindication of rights secured by federal statutes. Once a plaintiff demonstrates that a statute confers an

---

[6]By way of contrast, sections 10101(c) and 10308(d) of title 52 demonstrate that Congress knows how to provide for specific civil actions brought by the Attorney General to enforce section 10301. Notably, States have no sovereign immunity against the federal government. *See Alden*, 527 U.S. at 755-56; *West Virginia v. United States*, 479 U.S. 305, 311 (1987).

9

individual right, the right is presumptively enforceable by § 1983." *Gonzaga Univ.*, 536 U.S. at 284 (internal reference omitted). Count I, then, is a section 1983 claim like count II.

The plaintiff also may respond by arguing that Congress abrogated the State's sovereign immunity when it passed the Voting Rights Act.[7] Congress does have the power to abrogate that immunity with respect to private causes of action, but only by "an unequivocal expression of congressional intent to overturn the constitutionally guaranteed immunity of the several States." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985) (internal quotation and citation omitted). Emphasizing the requirement that there be a "clear legislative statement" of an intent to abrogate, the Supreme Court explained:

> To temper Congress' acknowledged powers of abrogation with due concern for the Eleventh Amendment's role as an essential component of our constitutional structure, we have applied a simple but stringent test: Congress may abrogate the States' constitutionally secured immunity from suit in federal court only

---

[7]For this argument, the plaintiff presumably would resort to reliance on opinions from two district courts and the Sixth Circuit. *See Mixon v. Ohio*, 193 F.3d 389, 398 (6th Cir. 1999); *Hall v. Louisiana*, 974 F. Supp. 2d 978, 988 (M.D. La. 2013); *Reaves v. DOJ*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005). Two of these cases, however, offer no analysis at all on the question of abrogation. *See Mixon*, 193 F.3d at 398 ("With respect to whether Congress intended to abrogate the States' sovereign immunity under the Voting Rights Act, we believe the language and purpose of the statute indicate an affirmative response. The language of Section 2 of the Act, 42 U.S.C. § 1973, specifically prohibits 'any State or political subdivision' from discriminating against voters on the basis of race."); *Hall*, 974 F. Supp. 2d at 988 ("First, the Court notes that Congress has abrogated the states' sovereign immunity for claims arising under the Voting Rights Act.") (simply string citing *Mixon* and *Reaves* for proposition). And *Reaves* addresses section 5 (not section 2) of the Voting Rights Act; after noting that the Supreme Court "has never explicitly held that [section 5] abrogates state sovereign immunity," *Reaves*, 355 F. Supp. 2d at 515, the district court does not identify any express abrogation language and instead finds abrogation by implication. That approach is directly contrary to the analysis required to find abrogation, discussed further below. In turn, none of these cases serve as persuasive authority here.

> by making its intention unmistakably clear in the language of the statute.

*Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 786 (1991) (internal quotation and citation omitted); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (characterizing this test "[t]o determine whether a federal statute properly subjects States to suits by individuals" as a "simple but stringent" one). "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction, it must do so specifically." *Atascadero State Hosp.*, 473 U.S. at 246.

A typical example of an "unequivocal expression of congressional intent to overturn the constitutionally guaranteed immunity of the several States" is the use of statutory language actually stating that a State "shall not be immune under the Eleventh Amendment." *See, e.g.*, 42 U.S.C. § 2000d-7(a)(1); 42 U.S.C. § 12202; 35 U.S.C. § 296(a); 17 U.S.C. § 511(a); *see Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 635 (1999) (noting with respect to section 296(a) that "Congress' intent to abrogate could not have been any clearer"); *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1303 (11th Cir. 2011) (same regarding 17 U.S.C. § 511(a)); *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 193 F.3d 1214, 1218 (11th Cir. 1999), *rev'd sub nom. Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (same regarding 42 U.S.C. § 12202); *Coolbaugh v. Louisiana*, 136 F.3d 430, 433 (5th Cir. 1998) (same regarding 42 U.S.C. § 2000d-7(a)(1), noting that abrogation "patently clear"); *cf. Dellmuth v. Muth*, 491 U.S. 223, 231 (1989) (noting federal statute's lack of any "reference whatsoever to either the Eleventh Amendment or the States' sovereign immunity" as basis for determination that sovereignty not expressly and clearly abrogated). Another example of how Congress could expressly abrogate sovereignty regarding a

cause of action is to expressly set out a cause of action that could only be brought by a non-State or non-federal actor.  *See* 25 U.S.C. § 2710(d)(7)(A) (providing federal district courts jurisdiction over "any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations" and placing "burden of proof . . . upon the State to prove that the State has negotiated with the Indian tribe in good faith to conclude a Tribal-State compact . . . ."); *Seminole Tribe of Fla. v. Florida*, 11 F.3d 1016, 1024 (11th Cir. 1994), *aff'd*, 517 U.S. 44 (1996) ("A closer examination of IGRA, however, reveals that, despite Congress' omission of a specific abrogation clause, Congress nonetheless manifested its intent to abrogate the states' immunity . . . The only possible defendant to such a suit is a state [.]  Thus, unless Congress intended to abrogate the states' immunity, this portion of IGRA would be of no effect.  Charged as we are with the task of giving effect to each portion of a statute, we must conclude that Congress intended to abrogate the states' sovereign immunity.").

Section 10301 (section 2 of the Voting Rights Act) does not have an express abrogation of state sovereign immunity in language similar to that described above.  And this provision can be given effect without concluding that Congress intended to subject the States to private suits in federal court to enforce this provision.

\* \* \*

Both of the plaintiff's claims travel under section 1983, and there is no express congressional abrogation of Eleventh Amendment sovereign immunity.  The *In re Young* analysis that applies in section 1983 actions against state officials must be followed here.  Without any "connection" between the Secretary and redistricting conduct alleged in the complaint, the plaintiffs' suit against the Secretary is effectively one against the State to challenge the constitutionality of an *anticipated* redrawing of CD-5 and to seek federal trial court

review of a decision of the Supreme Court of Florida.  Cf. *Schopler*, 903 F.2d at 1378 ("The [Eleventh A]mendment applies even when a state is not named as a party of record, if for all practical purposes the action is against the state.").  The Eleventh Amendment bars this action against the Secretary, and the complaint must be dismissed.

## CONCLUSION

The plaintiff's complaint focuses almost entirely on the action taken by the Supreme Court of Florida and the *anticipated* redistricting efforts by the legislative parties.  She makes no effort to describe any specific conduct or threatened conduct on the part of the Secretary that has caused the plaintiff's alleged constitutional injury.  In fact, the requested injunction against the Secretary would have no effect on the actual conduct or anticipated conduct that the plaintiff describes regarding CD-5.  Eleventh Amendment sovereign immunity bars precisely this type of action brought against the Secretary.  The complaint against the Secretary should be dismissed.

WHEREFORE, Secretary of State Ken Detzner prays that the Court dismiss the complaint filed against him.

Respectfully submitted,

*/s/ Adam S. Tanenbaum*
ADAM S. TANENBAUM (FBN 117498)
  *General Counsel*
  adam.tanenbaum@dos.myflorida.com
DAVID A. FUGETT (FBN 835935)
  *Assistant General Counsel*
  david.fugett@dos.myflorida.com

FLORIDA DEPARTMENT OF STATE
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
Phone: (850) 245-6536
Fax: (850) 245-6127

*Counsel for the Florida Secretary of State*

13

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this eighth day of September, 2015, a true copy of the foregoing motion and memorandum was filed with the Court utilizing its CM/ECF system, which will transmit a notice of said electronic filing to all counsel of record registered with the Court for that purpose.

*/s/ Adam S. Tanenbaum*
ADAM S. TANENBAUM
ATTORNEY
