IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CONGRESSWOMAN CORRINE BROWN,

    *Plaintiff*,

v.                                        Case No. 4:15-cv-00398-MW-CAS

KEN DETZNER, in his official capacity
as Secretary of State, THE FLORIDA
SENATE and THE FLORIDA HOUSE
OF REPRESENTATIVES,

    *Defendants*.
_____/

**DEFENDANT SECRETARY'S MEMORANDUM IN OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

    Defendant Secretary of State Ken Detzner hereby opposes the plaintiff's motion for preliminary injunction (DE 3). The Court should deny the request for preliminary injunction based on the Eleventh Amendment jurisdictional bar discussed in the Secretary's motion to dismiss (DE 24 at 4 – 13); the sovereign immunity argument set out in those pages is incorporated here by reference. Moreover, the Court should deny the injunction that the plaintiff seeks against the Secretary because it would not redress the harm she alleges and because her claim for relief relies only on speculation about possible future events that would not involve the Secretary.

**INTRODUCTION**

    The plaintiff, Congresswoman Corrine Brown, currently represents Florida's Fifth Congressional District ("CD-5"), characterized as a "minority access district." DE 1 at 1 – 2. She claims that the Supreme Court of Florida's decision in *League of Women Voters of Fla. v. Detzner*, Case No. SC14-1905, -- So. 3d --, 40 Fla. L. Weekly S432 (Fla. July 9, 2015)—a case

that remains open and pending before a Florida trial court on a temporary remand—"ordered [CD-5] redrawn (and has effectively redrawn) in a manner that would undo its historic configuration and disperse the community contained within it." DE 1 at 2. The plaintiff contends that the "drawing and redrawing of [CD-5], as required by the Florida Supreme Court's opinion, carries with it the very real and imminent possibility of [the plaintiff's] constituents being deprived of the ability to elect a representative of their choice." DE 1 at 1.

The only reference in the complaint to the Secretary is a general allegation that the Secretary "serves as Florida's Chief Elections Officer, and custodian of the Florida Constitution," DE 1 at 3, ¶ 6. The plaintiff does not allege any action that the Secretary has taken or threatens to take that would interfere with her rights or that would affect the deprivation of her constituents' ability to elect a representative of their choice.

Instead, the complaint discusses Florida history that led to the drawing of CD-5 in its current form. DE 1 at 3 – 10, ¶¶ 9 – 53. The complaint closes its general allegations with an assertion that the Supreme Court of Florida ordered that CD-5 "be redrawn in an East-West configuration." DE 1 at 10, ¶ 53. There is no allegation about whether CD-5 in fact was redrawn by the Legislature in that way, nor could there be: To date, the Legislature has not adopted a congressional redistricting plan.

Nonetheless, count I asserts that the Supreme Court of Florida's order on how to redraw CD-5 constitutes "minority vote dilution" and violates section 2(b) of the Voting Rights Act, now codified at section 10301(b), title 52, of the United States Code. DE 1 at 10 – 11, ¶¶ 55, 57.[1] Despite blaming the court order for the feared change to CD-5, the plaintiff alleges that the

---

[1] The complaint uses an older statutory citation. Section 1973 of title 42 was transferred to section 10301 of title 52 of the United States Code.

Secretary, along with the legislative defendants, is continuing to violate section 10301(b) "by enforcing standards, practices, or procedures that deny African American voters opportunity to participate effectively in the political process on an equal basis with other members of the electorate." DE 1 at 11, ¶ 59; *see also id.* at 11 – 12 (prayer for relief). Similarly, in count II, even though she contends that the Supreme Court of Florida ordered the east-west configuration of a new CD-5 (and even though one has not even been adopted), the plaintiff asserts that the Secretary adopted CD-5 "with an intent to, and it does, deny or abridge the right of African American citizens residing in District 5 to vote on account of their race and color," and that this "intentional discrimination is in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and 42 U.S.C. § 1983." DE 1 at 12, ¶¶ 61 – 62.

Of course, there is nothing the plaintiff *could* allege that the Secretary has done in connection with the drawing of CD-5, because the Secretary has nothing to do with the enactment of congressional districts in Florida. Congressional redistricting is a uniquely legislative function under the U.S. Constitution. The plaintiff seems to acknowledge as much in her memorandum in support of the injunction motion: "Plaintiff faces actual and impending irreparable harm, as *the Florida Supreme Court has ordered the Florida Legislature* to redraw the congressional map in question. Unless enjoined by this Court, Defendants will continue to violate the Voting Rights Act of 1965." DE 3 at 5 (emphasis supplied). Still, the plaintiff's prayers for relief seek a determination that the *Secretary*'s "actions violate the rights of the Plaintiff as protected by Section 2 of the Voting Rights Act," DE 1 at 11, and that his "actions violate the Fourteenth and Fifteenth Amendment [sic] to the United States Constitution and 42 U.S.C. § 1983," DE 1 at 12. Without the connection between the challenged conduct and the Secretary, the suit against the Secretary is barred by the Eleventh Amendment.

## THE PLAINTIFF IS NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF AGAINST THE SECRETARY

To obtain a preliminary injunction, plaintiff must show a likelihood of success on the merits, irreparable harm, a balance of equities in their favor, and that an injunction serves the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Again, because of the Eleventh Amendment jurisdictional bar discussed at length in the Secretary's motion to dismiss (DE 24 at 4 – 13), the plaintiff cannot show a likelihood of success. Indeed, the Court should not reach the question of granting a preliminary injunction until it resolves the Secretary's motion to dismiss.

"Eleventh Amendment immunity is in the nature of a jurisdictional bar," and because that immunity "is a right to be free from the burdens of litigation," the issue "should be decided at an early stage." *Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996) (holding that trial court abused discretion by reserving ruling on immunity question and ordering parties to mediation) (internal citations omitted). "[T]he Eleventh Amendment is a recognition that the states retain certain attributes of sovereignty, and one of its purposes is to protect states from the indignity of being haled into federal court by private litigants. This purpose is not served when a ruling on Eleventh Amendment immunity is unnecessarily postponed." *Id.* at 1448-49 (internal citation omitted).

Moreover, the plaintiff does not allege any harm caused by the Secretary. "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal citation omitted). In fact, nowhere in the

plaintiff's motion and supporting memorandum does she identify conduct or threatened conduct by the Secretary that is causing her harm.  Instead, the plaintiff generally references "election practices and procedure used to apportion Congressional District 5 [that] violate the rights of African American voters in violation of Section 2 of the Voting Rights Act." DE 3 at 2.  And, as noted above, the plaintiff focuses on the *Legislature*'s redrawing of CD-5 "as the Florida Supreme Court has ordered." DE 3 at 5.

"Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1302 (11th Cir. 2007) (internal quotation and citation omitted); *see also* Legis. Parties' Motion to Dismiss, DE 23 at 4 – 5 (arguing lack of subject matter jurisdiction based on ripeness doctrine, because the plaintiff's "claims rely on speculation about contingent future events").  The plaintiff fails here to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).  In fact, the plaintiff fails to establish that she even has standing to seek an injunction against the Secretary; any harm the plaintiff claims is not traceable to the Secretary.  Rather, to the extent the plaintiff alleges any conduct causing harm, she references the Legislature acting at the direction of the Supreme Court of Florida.  *See* DE 3 at 5.  The plaintiff does not identify any connection between the Secretary and the Legislature's responsibility to draw congressional district boundaries, and she does not identify any specific enforcement action he has taken or threatens to take causing her harm.  The injunction the plaintiff seeks against the Secretary, in other words, would not be reasonably

likely to redress any harm that the plaintiff describes in her complaint. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (explaining that for standing, "there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant," and "redressability—a likelihood that the requested relief will redress the alleged injury") (internal citations omitted); *Fla. Ass'n of Rehab. Facilities, Inc. v. HRS*, 225 F.3d 1208, 1219 (11th Cir. 2000) (noting that *Ex parte Young* exception to Eleventh Amendment immunity "applies to cases in which the relief against the state official *directly ends* the violation of federal law") (emphasis supplied).

## CONCLUSION

The plaintiff's complaint and motion for preliminary injunction focuses almost entirely on the action taken by the Supreme Court of Florida and the *anticipated* redistricting efforts by the Legislative Parties. She makes no effort to describe any specific conduct or threatened conduct on the part of the Secretary that has caused the plaintiff's alleged injury. In fact, the requested injunction against the Secretary would have no effect on the actual conduct or anticipated conduct that the plaintiff describes regarding CD-5—conduct that would be on the part of the Legislative Parties and the Supreme Court of Florida, in any event. Both of the plaintiff's claims travel under section 1983, there is no express congressional abrogation of Eleventh Amendment sovereign immunity, and the *In re Young* analysis that applies in section 1983 actions against state officials must be followed here. The plaintiff has not alleged any basis—and no legal basis exists—to override the Secretary's sovereign immunity and subject him to a private suit in this Court. The Eleventh Amendment bars precisely this type of action against the Secretary. The motion for preliminary injunction should be denied.

[*Signature block on next page*]

6

Respectfully submitted,

*/s/ Adam S. Tanenbaum*
ADAM S. TANENBAUM (FBN 117498)
 *General Counsel*
 adam.tanenbaum@dos.myflorida.com
DAVID A. FUGETT (FBN 835935)
 *Assistant General Counsel*
 david.fugett@dos.myflorida.com

FLORIDA DEPARTMENT OF STATE
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
Phone: (850) 245-6536
Fax: (850) 245-6127

*Counsel for the Florida Secretary of State*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this eighth day of September, 2015, a true copy of the foregoing memorandum in opposition was filed with the Court utilizing its CM/ECF system, which will transmit a notice of said electronic filing to all counsel of record registered with the Court for that purpose.

*/s/ Adam S. Tanenbaum*
ADAM S. TANENBAUM
ATTORNEY