# EXHIBIT 3

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

RENE ROMO, et al,                               CASE NO: 2012-CA-412

    Plaintiffs,
vs.

KEN DETZNER and PAM BONDI,

    Defendants.
_____/

THE LEAGUE OF WOMEN VOTERS              CASE NO: 2012-CA-490
OF FLORIDA, et al,

    Plaintiffs,
vs.

KEN DETZNER, et al,

    Defendants.
_____/

## ORDER APPROVING REMEDIAL REDISTRICTING PLAN

**THIS CASE** is before me following submission of a remedial redistricting plan, passed by the Legislature during special session. Having considered the remedial plan, Plaintiff's opposition to the remedial plan, the argument of counsel, and the testimony offered both at trial and at the remedial hearing, I find the following:

In the Final Judgment entered on July 10, 2014, I declared the redistricting plan enacted by the Legislature in 2012 constitutionally invalid pursuant to Article III, Section 20 of the Florida Constitution. I specifically invalidated Districts 5 and 10 finding that they unnecessarily deviated from tier-two traditional redistricting principles and that they were the product of tier-one-prohibited intent to benefit a political party or incumbent. While I found the plan invalid in its entirety, I concluded that the entire map did not need to be redrawn. Thus, only Districts 5

1

and 10, along with "any other districts affected thereby" were required to be changed during the remedial special session. *Final Judgment at 41.*

Plaintiffs contend that the remedial plan is still unconstitutional and does not conform to the dictates of the Final Judgment. They contend that changes made by the Legislature in the remedial special session were superficial and did not cure the fundamental flaws I found present in plan 9047. I disagree and find that the remedial plan adequately addresses the constitutional deficiencies I found in the Final Judgment.

At the heart of Plaintiffs argument is a contention that a North-South configuration of District 5 is anachronistic and unconstitutional under the new standards outlined in Article III, Section 20.[1] They have three exemplar maps, which have a black opportunity district running in an East-West configuration across North Florida from Jacksonville to Chattahoochee, picking up portions of Tallahassee along the way.

Plaintiffs argue that their exemplar District 5, which has a black voting age population (BVAP) of 45.12 %, would not be retrogressive and is more compact and splits fewer counties than District 5 in the remedial plan.[2] They also contend that this East-West configuration allows District 10 to become a minority influence district with BVAPs in the various exemplars ranging from roughly 25% to 27%.

In terms of traditional redistricting principles, tier two requirements, the East-West configuration is somewhat more compliant. Plaintiff's exemplar District 5 has a Reock score of .119 and Convex Hull score of .768 (1 is best in both scores). It splits 4 counties. On the other

---

[1] To be sure Plaintiffs stop short of arguing that any North-South configuration would be unconstitutional, though that would be a reasonable inference from their argument. Regardless, none of their exemplar maps, either at trial or in this phase, are North-South oriented. Moreover, the trial testimony was clear that the only way to get anywhere close to 45 % BVAP in North Florida was a Jacksonville to Orlando district or a Jacksonville to Tallahassee district.

[2] Because of the way I am deciding the overall issue, I need not reach the question of whether the exemplar district would or would not be retrogressive. I do point out that the diminution from the benchmark of 4.8% would be higher than any approved by the Supreme Court in *Apportionment I.*

2

hand, remedial District 5 has Reock score of .127 and a convex hull score of .417. It splits 7 counties. Plaintiffs suggest that this is the end of the inquiry and that they have shown that Remedial District 5 is still invalid.

The Legislature is not required, however, to produce a map that the Plaintiffs, or I, or anyone else might prefer. The Legislature is only required to produce a map that meets the requirements of the Constitution. My "duty 'is not to select the best plan, but rather to decide whether the one adopted by the legislature is valid.'" *Apportionment I*, 83 So. 3d at 608 (quoting *In re Apportionment Law—1992*, 597 So. 2d at 285).

There are legitimate non-partisan policy reasons for preferring a North-South configuration for this district over an East-West configuration, and the Plaintiffs have not offered convincing evidence that an East-West configuration is necessary in order to comply with tier-one and tier-two requirements of Article III, Section 20.

While District 5 in the remedial map is not a model of compactness, it is much improved. It sufficiently addresses the concerns I identified in the Final Judgment. The widening of the district causes it to be less serpentine and visually more compact. It is also numerically more compact. The remedial map removed the appendage into Seminole County and addressed the concerns I had that it over-packed minorities into the district for partisan purposes.

Likewise, District 10 in the remedial map is in compliance with the Final Judgment. The appendage that was drawn with the intent to benefit the incumbent is gone. The district is otherwise compliant with tier-two criteria.

In their Motion to Alter or Amend the Judgment, the Defendants asked that I clarify that the 2014 election cycle would go forward under the now stricken map. I denied their motion

without prejudice and directed the Secretary of State, along with the Supervisors of Elections, to come up with a possible schedule for a special election under a remedial map.

Perhaps I was not as clear in my order as I should have been. What I was looking for was a proposed schedule with specific dates that would allow for a special election prior to the end of 2014, along with any legal or logistical hurdles to holding such an election. This would have given me a clearer picture of whether it was prudent to attempt a remedy for this election cycle. An election in 2015 is not a viable option. Plaintiffs asserted in their written objections that an earlier timetable was legally and logistically doable. However, they have offered absolutely no evidence to support this claim or to contradict what the Secretary and the Supervisors have presented. Accordingly, based on the evidentiary record before me, I conclude that a special election under the remedial map is not an appropriate remedy under the circumstances. The 2014 elections will have to be held under the map as enacted in 2012.

It is therefore **Ordered and Adjudged** as follows:

1) The remedial map plan 9057 is hereby approved and declared to be in conformance with Article III, Section 20 of the Florida Constitution;

2) The 2014 congressional elections shall proceed under the map originally adopted in 2012; and

3) I reserve jurisdiction to enforce this order and the terms of the Final Judgment.

**DONE AND ORDERED** this _22_ day August, 2014.

TERRY P. LEWIS, Circuit Judge

Copies to:
All Counsel of Record

4