IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CONGRESSWOMAN CORRINE BROWN,
*et al.*,

    Plaintiffs,

v.	Case No. 4:15cv398-MW/CAS

KEN DETZNER, in his official capacity as
Secretary of State of the State of Florida, *et al.*,

    Defendants.
_____/

## ORDER GRANTING IN PART MOTION TO AMEND COMPLAINT; DENYING MOTION TO DISMISS

Before ROSENBAUM, Circuit Judge, HINKLE and WALKER, District Judges

BY THE COURT:

This matter is before the Court upon Plaintiffs' Partially Unopposed Motion to File First Amended Verified Complaint, ECF No. 34; Defendant Secretary of State's Motion to Dismiss, ECF No. 24; and Defendant Secretary of State's Response in Opposition to Plaintiff's Motion to Amend Complaint, ECF No. 44. For the reasons set forth below, Plaintiffs' Motion to Amend is granted in part and reserved in part, while the Secretary's Motion to Dismiss is denied with respect to the issues argued therein.

Plaintiff Congresswoman Corrine Brown challenges the redrawing of Florida's 5th Congressional District ("the District"). Her initial lawsuit, with Brown as the sole plaintiff, listed Florida's Secretary of State Ken Detzner, the Florida Senate, and the Florida House of Representatives as Defendants and sought declaratory and injunctive relief prohibiting Florida from redrawing the District in a manner that violated federal law. ECF No. 1. Detzner sought to

1

dismiss Brown's Complaint on the grounds of Eleventh Amendment immunity. ECF No. 24. Without resolving Detzner's motion, we stayed Brown's lawsuit while the Florida state courts resolved a separate challenge to Florida's redistricting efforts. ECF No. 26. After the Florida courts implemented a new redistricting plan, including a redrawn District 5, we lifted the stay and permitted Brown leave to seek amendment of her Complaint. ECF No. 29.

Brown timely filed a motion seeking leave to amend her Complaint, which was unopposed by all Defendants except Detzner. ECF No. 34, ¶ 4. Brown's Amended Complaint adds dozens of new plaintiffs, who are all black voters from counties affected by the redrawn District. ECF No. 34-1, ¶¶ 6-10. As she did her in original Complaint, Brown's Amended Complaint sues Detzner in his official capacity as "Florida's Chief Elections Officer, and custodian of the Florida Constitution." *Id.* ¶ 11. The Amended Complaint adds that Detzner "is charged with administering Florida's election laws." *Id.* Brown's Amended Complaint also augments the factual allegations of the initial Complaint. *See id.* ¶¶ 14 – 112.

Brown's Amended Complaint seeks declaratory and injunctive relief on four counts, each seeking an injunction prohibiting the Defendants from "enforcing or giving any effect to" the redrawn District 5. The first two counts seek relief under federal law. Count I, brought under 42 U.S.C. § 1983, alleges that the redrawn District 5 violates section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301. ECF No. 34-1, ¶¶ 113-118. Count II, also brought under § 1983, alleges that District 5 was redrawn with the intent to discriminate against black citizens, in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution. *Id.* ¶¶ 119-121.

The third and fourth counts are state-law claims alleging violations of Article III, § 20 of the Florida Constitution. Count III contends that redrawn District 5 was "adopted with an intent

to, and it indeed does, deny or abridge the right of black citizens residing in District 5 to vote on account of their race and color." *Id.* ¶¶ 122-125. Count IV alleges that redrawn District 5 diminishes the ability of black voters to elect the candidates of their choice in comparison to the old District 5. *Id.* ¶¶ 126-130.

Detzner filed a response opposing Brown's Motion to Amend. ECF No. 44. In his response, Detzner argues that Brown's amendment is futile[1] in that it fails to overcome the Eleventh Amendment immunity hurdle raised in Detzner's motion to dismiss the original Complaint. *Id.* at 5-6. Detzner also asserts that this Court lacks jurisdiction over Brown's added state-law claims. *Id.* at 7.

We first address Detzner's arguments that the Eleventh Amendment bars the federal-law claims against him in his official capacity. Detzner is correct that, generally, the Eleventh Amendment bars suits in federal court against states brought by the state's own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355 (1974); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). This protection from suit extends to state officers sued in their official capacities when "the state is the real, substantial party in interest." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09 (1984) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464, 65 S. Ct. 347, 350 (1945)).

As Detzner concedes, however, the well-recognized *Ex parte Young* doctrine is an exception to this principle, permitting suits seeking prospective equitable relief from violations of federal law to proceed against state officers in federal court. *Pryor*, 180 F.3d at 1336; *see also Verizon Maryland, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760 (2002);

---

[1] Although leave to amend should be given freely, Fed. R. Civ. P. 15(a)(2), denial of an amendment is justified as being futile when the amended pleading would be subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

*Ex parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441, 453-54 (1908).  For *Ex parte Young* to apply, the officer sued must have "some connection" to and "be responsible" for the challenged conduct.  *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988); *see Ex parte Young*, 209 U.S. at 157, 28 S. Ct. at 453 ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.").

Detzner essentially contends that the "general executive power" he possesses as Florida's Chief Elections Officer is too attenuated of a connection between him and the challenged conduct of illegally drawn Congressional districts.  ECF No. 24 at 6-8.  We disagree.

It is true that the Eleventh Circuit has stated that a governor's "general executive power" is an insufficient basis for challenging a state statute in federal court, especially when "the enforcement of the statute is the responsibility of parties other than the governor."  *Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003).  But Detzner's reliance on this case is misplaced.  In *Women's Emergency Network*, the plaintiffs sued the governor challenging Florida's "Choose Life" specialty license-plate program.  323 F.3d at 940-41.  After finding the plaintiffs lacked standing, the Eleventh Circuit also observed that the governor was not a proper party because his general charge of enforcing the laws and his "shared authority over the Department [of Highway Safety and Motor Vehicles] is simply too attenuated to establish that he is 'responsible for' the distribution of funds to adoption agencies."  *Id.* at 949-50.

Unlike *Women's Emergency Network*, Congresswoman Brown is not suing Detzner merely because he sits nominally at the top of an agency far removed from any challenged

conduct. She is challenging the implementation and enforcement of Congressional districts allegedly drawn in violation of federal law. As Secretary of State, Detzner is connected to and responsible for many aspects of elections in Florida, including maintaining uniformity in the interpretation and implementation of Florida's election laws, Fla. Stat. § 97.012(1); registering voters, *id.* § 97.012(2), (7), (9), (10), (11), (13); *id.* § 98.035(1); bringing actions against local election officials to enforce Florida election law, *id.* § 97.012(14); gathering information on voting irregularities, *id.* § 97.012(12), (15); and certifying the qualifications and nominations of candidates for office, *id.* § 99.061(6); *id.* § 99.121. We conclude that although Detzner may not draw the Congressional districts in Florida, by administering and conducting Florida's elections, he sufficiently "enforces" those districts to bring him within the scope of *Ex parte Young*. *See Ex parte Young*, 209 U.S. 157, 28 S. Ct. at 453 ("It has not, however, been held that it was necessary that such duty should be declared in the same act which is to be enforced. . . . The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.").[2]

Because Detzner is a proper party in this lawsuit under *Ex parte Young*, his Motion to Dismiss, ECF No. 24, is denied. And while Detzner raises these same arguments in opposition to Brown's Motion to Amend, ECF No. 44, at least with respect to the two federal-law claims in the Amended Complaint, they are similarly unavailing. As no other opposition exists to Brown's proposed Amended Complaint, see ECF No. 34, ¶ 4, we grant her Motion to Amend with respect to everything except the two state-law claims contained in Counts III and IV. We reserve ruling on whether Brown may bring these state-law claims pending her briefing on whether they are

---

[2] Indeed, Florida courts have held that the Secretary of State can and should be named as a party in suits seeking injunctive relief regarding the conduct of elections. *See Abramson v. Beer*, 936 So. 2d 1208, 1208 (Fla. 4th DCA 2006).

barred by *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121, 104 S. Ct. 900, 919 (1984).  *See* ECF No. 46 at 2.

Accordingly, it is ORDERED and ADJUDGED that Defendant Secretary of State's Motion to Dismiss, ECF No. 24, is DENIED.  It is further ORDERED that Plaintiffs' Partially Unopposed Motion to File First Amended Verified Complaint, ECF No. 34, is GRANTED IN PART and RESERVED IN PART as described above.  Responses to the Amended Complaint shall be filed no later than 14 days after the Court rules on the reserved part of the Motion to Amend.

**DONE and ORDERED** this 13th day of January 2016.

_____
ROBIN S. ROSENBAUM
UNITED STATES CIRCUIT JUDGE
For the Court

Copies furnished to:

Counsel of record