IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CONGRESSWOMAN CORRINE BROWN,
JOHNNY BROWN, THEODORE BROWN,
MARY LAWSON BROWN, MARY L. GEORGE,
CRYSTAL R. BROWN, JUSTIN CAMPBELL,          Case No.: 4:15-cv-00398-MW-CAS
FERRILL HILL, MARGIE KELLY CODY,
JOSEPHINE HALL, SANDRA JACKSON,
MAMIE JACKSON, WILFRED W. REDDICK,
JR., SHANTEZ ROBINSON, CARRIE DAVIS,
JEAN REDDICK, ALVIN SHEPARD, CURTIS
WALKER, PHYLLIS JOHNSON, JEROME
BROWN, JOANN M. BROWN, HAZEL D. GILLIS,
ANTONIA G. BRYANT, EULIE B. JOHNSON,
LAVONNE P. MITCHELL, DARRYL MACK,
ANTHONY MACK, DORETHA MACK, CONSTANCE
S. HALL, SHAKUR ALI, MICHAEL ASHLEY,
LAWRENCE AVERBECK, ANITA BAILEY, LEON
BERRIER, DANIEL L. COLE, JASMINE CROMWELL,
TRICIA DUNLAP, LA' DAISHA EVANS, JAMES
FREEMAN, RUSSELL T. GASKIN, CLARETHA S.
HICKS, TEVIN HENDERSON, MITZI HUTCHINSON,
ANGELIQUE MATTHEWS, ANNA MCLAUGHLIN,
EDWIN MERRITT, LILLIE P. POWELL, TAURICE
RICKS, DEVIN ROBERTS, CARY P. ROBINSON,
ALEXANDRA SAFFICE, SHAKA SHABAZZ, FELICIA
SMITH, RICHARD ALAN SPAULDING, WILLIE
THOMAS, TEAONNDA THOMPSON, RODERIC
TURNER, MARY S. ADAMS, JOY GREGORY, WILBERT
GREGORY, CARLOTTA L. GUYTON, LUELLA
MCQUEEN, DOROTHY M. OLIVER, JACOBY
PITTMAN, BARON RIVERS, KIMBERLY RIVERS,
ANMENIA SHAHAB, NEEMA YA NATHIERI,
MELVIN A. PHILPOT, VELMA WILLIAMS,
BEVERLYE COLSON NEAL, TYRONE FIELDS,
GLORIA R. GREEN, MAXINE S. HIXON, REBECCA
JOHNSON, NEVA SPANN-KIRKLAND, SUSIE L.
JOHNSON HARRIS, EDDIE L. JAMES, BENTLEY
M. CAREY, DWYCE L. ROSS, KENNETH WALKER,
TIFFANY WARE, VANESSA WILLIAMS, CHARITA FINCH,

1

LAVENIA MAY, DR. ROLOUS A. FRAZIER, JR., DOROTHY
FLUITT, SHEILA B. SMITH, CLARISE REDDICK, DAISY
BALES, CONSTANCE BANGO, DELORIS R. SHEPHERD,
VERNON MCQUEEN, HERBERT WILLIAMS JR.,
ROD ZEIGLER, ROYCE FLAGLER, MABLE BUTLER,
JEAN CAMPBELL, WILLIE CAMPBELL, ELLA MAE
CAMPBELL, KALEIGH CAMPBELL, MIA CAMPBELL,
WALTER DULES WILLIAMS, LULA COOKS WILLIAMS,
ROBERTA WILLIAMS, DANIEL J. WILLIAMS, IDA M.
CARSON, JUANITA SANDERS, CHERYLL DANIELS, EDDIE
A. BENN, RICH SLEET, MARIA T. BARNES, ALLEN WIGGINS,
HENRIETTA J. TICE, JASMINE MCKAY, LATOYA DAVIS,
AND LULA DAVIS,

   **Plaintiffs,**

**vs.**

**KEN DETZNER, in his official capacity as**
**Secretary of State of the State of Florida,**
**THE FLORIDA SENATE and THE**
**FLORIDA HOUSE OF REPRESENTATIVES,**

   **Defendants.**

---

## <u>PLAINTIFFS' RESPONSE TO LEGISLATIVE PARTIES' MOTION TO DISMISS</u>

   Plaintiffs, by and through undersigned counsel, respond to Defendants The Legislative

Parties' Motion to Dismiss and supporting memorandum of law (Doc. 51). Because Plaintiffs'

Amended Complaint sufficiently states a cause of action pursuant to the requirements of Rule 8(b)

of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit that Defendants' Motion to

Dismiss should be denied.

## ARGUMENT AND MEMORANDUM OF LAW

### I.    Standard for Motion to Dismiss

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court is required to accept as true "all facts set forth in the plaintiff's complaint." *Grossman v. Nations Bank, N.A.* 225, F.3d 1228, 1231 (11th Cir. 2000). Further, the court must draw all reasonable inferences in a light most favorable to the plaintiff. *See Bryant v. Avado Brands, Inc.* 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007); Generally, to survive a motion to dismiss and meet the requirements of Fed. R. Civ. P. 8(a)(2), a complaint need not contain "detailed factual allegations," but rather "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556, U.S. at 678. The plausibility standard does not, however, impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence in support of the claim. *Id.; Twombly,* 550 U.S. at 556. Finally, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.,* 760 F.2d 700, 703 (11th Cir. 1985).

### II.   Plaintiffs Have Standing to Bring this Suit Against the Legislative Parties

The Legislative Parties assert that Plaintiffs lack standing to bring this cause of action against them because the Florida Legislature does not have the authority to redress the Constitutional and Voting Rights Act claims which Plaintiffs allege. In order to have standing to challenge government conduct, a plaintiff must show (1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that a favorable decision will

redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). In the context of redistricting challenges, a plaintiff has standing to challenge a congressional district so long as they reside within the district that was unlawfully drawn. *See Shaw v. Hunt*, 517 U.S. 899, 904 (1996). The Legislative Parties here do not argue that Plaintiffs will not be injured by the implementation of an East-West Congressional District 5 or that Congressional District 5 is not fairly traceable to the Government. Rather, they essentially argue that they are not a proper party because the Florida Legislature allegedly does not have authority to redress Plaintiffs' injuries. *See* Doc. 51 at 4.

First, it should be noted that under state law, contrary to the Legislative Parties' claims, the Legislative Parties possess the authority to remedy unlawfully drawn congressional voting districts. As stated in the Plaintiff's Amended Complaint, the Florida Senate and House of Representatives are "responsible for drawing redistricting plans in compliance with the Florida and United States Constitutions." Doc. 34-1 at ¶¶ 12–13. The geographic metes and bounds of congressional districts are, ultimately, creatures of state legislation. Section 8.0002, Fla. Stat. (2015) establishes the geographical layout of each congressional voting district, down to the county, tabulation district, precinct, and city block. Section 8.03, further states that "the districts named in §8.0002 constitute and form the congressional districts of the state, and a representative to the Congress shall be selected in and for each of the congressional districts as provided by law." § 8.03, Fla. Stat. (2015).

In addition to those statutes enacted by the legislature which physically describe the congressional districts, other provisions of Florida law contemplate that the legislature is ultimately responsible for drawing such districts. *See, e.g.,* Art. II, § 20 Fla. Const. (incorporating standards for drawing congressional districts into article of the Florida constitution outlining the

duties of the Florida Legislature); § 99.091(2) Fla. Stat. (2015) ("When Florida is entitled to additional representative according to the last census, representatives shall be elected from the state at large and at large thereafter until the state is redistricted *by the Legislature*") (emphasis added).

It is true that the current East-West configuration of District 5 was imposed pursuant to an order of the Florida Supreme Court, and was not originally created by the Florida legislature. However, this unique procedural posture does not alter the fact that Florida law vests the Legislative Parties with the power to redress the Voting Rights Act violations that Plaintiffs seek to remedy. The ultimate authority to draw congressional districts rests with the Florida legislature, and the judiciary's role in the process is limited "to only review apportionment plans for compliance with state and federal constitutional requirements and to adjudicate challenges to redistricting plans." *Advisory Opinion to the Attorney General Re Standards for Establishing Legislative District Boundaries*, 2 So.3d 175 (Fla. 2009) ("*Legislative District Boundaries*").

In *Legislative District Boundaries*, the Florida Supreme Court rejected a challenge to the Fair Districting Amendments by the Florida legislature, who argued that the proposed amendments divested from the legislature the authority to draw congressional districts and transferred its role to the judiciary. *Id.* at 187. The Florida Supreme Court found that even though the Amendments allowed the judiciary to review congressional districts, they did not "shift in any way the authority of the legislature to draw legislative and congressional districts. . . ." Therefore, based on its own interpretation of state law, the Florida Supreme Court's ruling in the earlier action has no bearing on the Florida Legislature's ability to redress the Voting Rights Act violations that Plaintiffs raise.

Having established that the Legislative Parties have authority to redress Plaintiffs' injuries under state law, the cases that the Legislative Parties cite for the proposition that Plaintiffs lack

standing are distinguishable here. The only binding authority addressing the issue of standing on which the Legislative parties rely is *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998), where the Eleventh Circuit found that the plaintiffs lacked standing to sue county supervisors of elections to enjoin enforcement of a statute that required political parties to post a bond. However, in *Socialist Workers Party*, the plaintiffs did not cite any law indicating that the supervisors of elections could enforce the challenged statute, and the plaintiffs' counsel even conceded that the supervisors had no such authority. *Id.* The Eleventh Circuit ruled as it did, not simply because the supervisors of elections lacked *enforcement* authority over the challenged law, but because they lacked *any* authority to redress the plaintiff's injuries. Here, by contrast, Florida law explicitly vests the Legislative Parties with the authority to redraw congressional districts, the precise remedy that Plaintiffs seek in the instant case.

Furthermore, the Legislative Parties' reliance on *Scott v. Taylor*, 405 F.3d 1251 (11th Cir. 2005) is similarly misplaced. While *Scott* did involve a challenge to legislatively enacted districts for county commission seats, the concurring judge who opined on the issue of standing rooted his arguments in the fact that the plaintiffs had sued a handful of individual legislators, rather than the legislative bodies as a whole. *Id.* at 1261. Indeed, the concurring opinion noted that "even an extraordinary decree ordering the legislators to vote to repeal or amend [the county redistricting plan] would be ineffective, for the legislators, *by themselves* are powerless to pass laws." *Id.* (emphasis added). By contrast, the Plaintiffs here sue the Legislative Parties as public officials representing the Florida Legislature as a whole, which is not only capable of passing a redistricting plan that would remedy the violations Plaintiffs challenge, but are charged under state law to create such plans.

6

The Legislative parties read these cases to impose an additional standing requirement for plaintiffs seeking to challenge legislation: that the adverse party in the litigation must have some enforcement authority over the statute in question. However, the lack of enforcement authority alone was not the reason the court took issue with the plaintiffs' standing in *Socialist Workers Party* and *Scott*. Rather, the defendants there were found to be improper parties because there was no remedy whatsoever the court could order that would afford relief to the plaintiffs. Indeed, under the Legislative Parties' reading of these cases, a legislative body would never be subject to suit, since enforcement of laws is generally a function delegated to the executive, rather than legislative, branch.

Furthermore, this reading of Article III's standing requirements would fly in the face of common practice for Voting Rights Act challenges, where the legislative body responsible for drawing congressional districts are often named as defendants in the suit. In many of the prior suits surrounding Florida Congressional District 5, the Florida legislature has been a defendant in the suit. *See, e.g., DeGrandy v. Wethrell*, 794 F. Supp. 1076 (N.D. Fla. 1992) (naming the Speaker of the Florida House and President of the Florida Senate as defendants); *Johnson v. Mortham*, 926 F. Supp. 1460, 1491 n. 64 (N.D. Fla. 1996) (noting that the Florida House of Representatives was a party defendant in action challenging constitutionality of predecessor to District 5); *Martinez v. Bush*, 234 F. Supp.2d 1275 (S.D. Fla. 2002) (naming the Speaker of the Florida House and the President of the Florida Senate as defendants). Additionally, numerous other redistricting claims have involved suits against the legislative body responsible for drawing voting districts to remedy violations of the Voting Rights Act. *See, e.g., Bone Shirt v. Hazeltine* 461 F.3d 1011 (8th Cir. 2006) (naming South Dakota House and Senate in § 2 and Equal Protection Clause Challenge); (naming city; *Jeffers v. Clinton*, 730 F. Supp. 196 (E.D. Ark. 1989) (naming Arkansas board of

apportionment in redistricting litigation); *Ketchum v. City Council of City of Chicago*, 630 F. Supp. 11 (D. Mass 1986) (naming Chicago City Council); *Simkins v. Gressette*, 631 F.2d 287 (4th Cir. 1980) (naming South Carolina House and Senate).

Given the fact that state law vests the Florida legislature with the authority to draw congressional districts, they are able to redress the constitutional and Voting Rights Act violations that Plaintiffs allege. Further, given the longstanding practice of including the legislative parties in redistricting legislation, the Legislative Parties have been properly named as defendants to this lawsuit.

### III.    This Court has authority to Issue Injunctive Relief Against the Legislative Parties

The Legislative Parties also argue that the Plaintiffs' claims should be dismissed on the grounds that this Court does not have the authority to enjoin the legislature to redraw Florida's voting districts. Contrary to this assertion, the Supreme Court has held that a federal district court may order a state to engage in statewide reapportionment to cure a malapportioned district. *See Whitcomb v. Davis*, 403 U.S. 124, 161 (1971). The Legislative Parties are correct in asserting that federal courts have generally afforded states an opportunity to correct defective Congressional districts on their own through special legislative sessions. *See Reynolds v. Sims,* 377 U.S. 533 (1964). However, this practice of deference to state legislators is a doctrine that deals with implementation of a remedy once a violation of federal law has been found, and is irrelevant to the jurisdictional issues that the Legislative Parties raise here in their motion to dismiss. Indeed, the same line of cases on which the Legislative Parties rely also ultimately have approved district courts' decisions to compel state legislatures to enact a particular plan when the state legislatures failed to do so on their own. *See, Whitcomb,* 403 U.S. at 162 ("When the legislature ignored the court's findings and suggestion, it was not improper for the court to order statewide redistricting .

. . ."); *Reynolds*, 377 U.S. at 586 (holding that district court acted properly where it implemented provisional statewide district plan to be used in the 1962 primary and general elections when state legislature failed to cure violations.) Therefore, given that a district court may enjoin a state legislature to enact a statewide congressional district plan, the Plaintiffs have properly sought injunctive relief against the Legislative Parties.

<u>Conclusion</u>

Because Florida law grants the Legislative Parties the authority to draw congressional districts, they are proper parties to this lawsuit and the Plaintiffs have standing to bring this action against them. Further, Plaintiffs may bring a claim for injunctive relief, as this court has authority to grant such relief against the legislative parties. For these reasons, the Legislative Parties' Motion to Dismiss should be denied.

**<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>**

Undersigned counsel for Plaintiffs hereby certify that this memorandum of law contains 2,184 words, excluding the case style, signature block, and Certificate of Service. The foregoing word count has been calculated utilizing Microsoft Word, the word processing software used to prepare this memorandum of law.

Respectfully submitted,

Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Bryan E. DeMaggio, Esquire
Florida Bar No.: 055712
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:      (904) 356-9661
Facsimile:      (904) 356-9667
Email:          sheplaw@att.net
COUNSEL FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16, 2016, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to the following:

**Adam S. Tanenbaum, Esquire**
**General Counsel**
**Florida Department of State**
**500 South Bronough Street, Suite 100**
**Tallahassee, Florida 32399-0250**

**David A. Fugett, Esquire**
**Assistant General Counsel**
**Florida Department of State**
**500 South Bronough Street, Suite 100**
**Tallahassee, Florida 32399-0250**

Jason N. Zakia, Esquire
Jesse L. Green, Esquire
Raoul G. Cantero, Esquire
Wachovia Financial Center
Suite 4900
200 South Biscayne Boulevard
Miami, Florida  33131

Andy V. Bardos, Esquire
Gray Robinson, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida  32301

David B. King, Esquire
Thomas A. Zehnder, Esquire
Vincent Falcone III, Esquire
King Blackwell Zehnder, et al.
25 East Pine Street
Orlando, Florida  32801

I HEREBY CERTIFY that on February 16th, 2016, a true and correct copy of the foregoing document and the notice of electronic filing was sent by United States Mail to the following non-CM/ECF participants:

N/A

_____
ATTORNEY

11